UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES PETTUS,

                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        04-CV-6364L

            v.

SUPT. MC GINNIS,
SGT. KERBEIN,
C.O. BROWN,
LT. CARINE,
D. SULLIVAN,

                                    Defendants.
_____

        Plaintiff, James Pettus, appearing *pro se*, commenced this action pursuant to 42 U.S.C.

§ 1983.  Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS") alleges that defendants, who at all relevant times were employed by DOCS, have

violated his rights under the United States Constitution.  Specifically, plaintiff alleges that in March

2004, defendant Correction Officer Wayne Brown issued a false misbehavior report against plaintiff

in retaliation for plaintiff's having testified against Brown at a disciplinary hearing involving another

inmate, Michael Charles.  Following a hearing on Brown's charges against plaintiff, plaintiff was

found guilty finding of harassment, and sentenced to thirty days in keeplock.  Dkt. #1 at 14.[1]

_____

        [1]Plaintiff was found not guilty on a false-statement charge.

In addition to Brown, plaintiff has sued four other DOCS employees, alleging that they participated in the constitutional violation through their involvement in the disciplinary hearing against plaintiff and in the administrative review of the finding of guilt.  All five defendants have moved for summary judgment.  For the reasons that follow, the motion is granted.

## DISCUSSION

### I. Plaintiff's Failure to Respond to the Summary Judgment Motion

Although plaintiff has filed certain documents, and sent several letters to the Court since defendants filed their summary judgment motion, he has not submitted an actual response to the motion; none of his submissions address the merits of defendants' motion.  As stated, though, he has filed several documents, most recently on January 11, 2008, asking the Court to issue a decision on defendants' motion.  *See* Dkt. #62, #68, #71, #74.

Rule 56(e) of the Federal Rules of Civil Procedure provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Court of Appeals for the Second Circuit has held that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion.  *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2[d] Cir. 1999); *see also Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2[d] Cir. 2001).

In the instant case, defendants' notice of motion (Dkt. #53) and the Court's scheduling order (Dkt. #54) both gave plaintiff notice of the requirements of Rule 56 and the consequences of failing to respond properly to a motion of summary judgment.   There is no question that plaintiff has been adequately advised of the pendency of the motion, of the need for him to respond and the form in which he should do so, and of the consequences of not responding to defendants' arguments and factual allegations.   Since plaintiff has not done so, the Court may accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment.

## II. Defendants' Motion

In order to establish a First Amendment retaliation claim, plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that the defendants took adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action.   *Dawes v. Walker*, 239 F.3d 489, 492 (2$^d$ Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The Second Circuit has cautioned district courts to approach prisoner claims of retaliation "with skepticism and particular care." *Dawes*, 239 F.3d at 491. Such claims are "easily fabricated," since "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Id. See also Graham v. Henderson*, 89 F.3d 75, 79 (2$^d$ Cir. 1996) (observing that "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim

retaliation for every decision they dislike") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2$^d$ Cir. 1983)).

In the case at bar, defendants contend that plaintiff has failed to allege that he engaged in constitutionally protected conduct. They assert that plaintiff "simply argues that CO Brown retaliated against him for verbally defending another inmate," and that there "is no first amendment right to verbally defend another inmate against a correction officer." Defendants' Mem. of Law (Dkt. #51) at 6 (citing *Nevares v. Morrissey*, No. 95 Civ. 1135, 1999 WL 760231 (S.D.N.Y. Sept. 27, 1999)).

Plaintiff does not simply allege, however, that he "verbally defended another inmate." He alleges that he *testified* on behalf of another inmate (Charles), and in particular, that he testified that Brown had assaulted Charles. *See* Complaint at 8. Defendants have not disputed plaintiff's assertion that he testified at Charles's disciplinary hearing. *See* Defendants' Response to Plaintiff's Interrogatory (Dkt. #35) at 1. The facts here are thus clearly distinguishable from those in *Nevares*, in which the court held that "[c]omplaining aloud to correction officers about the treatment of another inmate while that inmate [wa]s being forcibly removed from his cell" was not constitutionally protected activity. 1999 WL 760231, at *6.

I conclude, however, that defendants are entitled to summary judgment on the ground of qualified immunity. Even if plaintiff's act of testifying at Charles's disciplinary hearing constituted protected activity under the First Amendment, the law in this circuit was unclear in that regard at the time of the events giving rise to this action.

- 4 -

Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' *Velardi v. Walsh*, 40 F.3d 569, 573 (2ᵈ Cir. 1994)." *Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2ᵈ Cir. 1997); *accord Brown v. City of Oneonta*, 106 F.3d 1125,1130-31 (2ᵈ Cir. 1997). "The matter of whether a right was clearly established at the pertinent time is a question of law." *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2ᵈ Cir. 2004).

In the case at bar, the Court has found no authority showing that it was clearly established in March 2004 that an inmate's act of providing testimony on behalf of another inmate at the other inmate's disciplinary hearing was protected by the Constitution. In 2005–the year *after* the events giving rise to this lawsuit–the Court of Appeals for the Second Circuit resolved a "split among the district courts in this Circuit as to whether retaliation [against a government employee] based on identification as a witness in a fellow [government] employee's discrimination suit could give rise to a First Amendment cause of action" by holding that "any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims, can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment." *Konits v. Valley Stream Central High Sch. Dist.*, 394 F.3d 121, 125 (2ᵈ Cir. 2005). The court held that the prior trial testimony of the *Konits* plaintiff in a coworker's lawsuit was related to the "broad[] public purpose" of redressing the coworker's claims

of sex discrimination against the government, and that her retaliation claim "implicated the access of the courts to truthful testimony ... ."  *Id.* at 125-26.

This Court has found no authority, however, that even today clearly establishes within this circuit whether an *inmate's* testimony on behalf of another inmate at the other inmate's disciplinary hearing is constitutionally protected.  Since inmates' First Amendment rights are generally more circumscribed than those of government employees, *see Diesel v. Town of Lewisboro*, 232 F.3d 92, 109 (2$^d$ Cir. 2000) (noting that "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens," with respect to First Amendment retaliation claims) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (in banc)), I conclude as a matter of law that, regardless of whether plaintiff's having testified on behalf of Charles played a role in Brown's issuance of the misbehavior report against plaintiff, Brown's actions did not violate any of plaintiff's clearly established rights of which a reasonable person in Brown's position would have known.  Brown is therefore entitled to qualified immunity.[2]  *See Rodriguez v. Phillips*, 66 F.3d 470, 478-79 (2$^d$ Cir. 1995) (finding it unnecessary to "determine the precise contours of the First Amendment's protections" in the context of an inmate who alleged that he had been retaliated against for approaching and speaking out against an officer who was engaged in disciplining another inmate, since court's inquiry on issue of defendant's qualified immunity was

---

[2]The Court is aware that "the 'public concern' requirement, developed in the context of public employee speech, has no place in the context of prisoner petitions for redress of grievances, which typically address matters of personal concern." *Friedl v. City of New York*, 210 F.3d 79, 87 (2$^d$ Cir. 2000).  In the case at bar, however, plaintiff was not seeking redress of his own grievances, but was helping a fellow inmate defend against disciplinary charges.  It is evident from *Konits* that whether the First Amendment protects the act of testifying on behalf of a third party was an open question in this circuit in 2004.

limited to whether right allegedly violated was clearly established at the time of the incident, and concluding that it was not).

In addition, although plaintiff does not appear to be asserting a due process claim, such a claim would fail in any event. In order to make out a due process claim based on the issuance of a false misbehavior report, plaintiff would have to allege, and ultimately prove, that the issuance of the misbehavior report led to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see, e.g.*, *Flemings v. Kinney*, No. 02 Civ. 9989, 2004 WL 1672448, at *3-*4 (S.D.N.Y. July 27, 2004).

In the case at bar, plaintiff was sentenced to thirty days in keeplock as a result of the charges against him. He has not alleged or demonstrated any facts suggesting that the conditions to which he was subjected during that relatively brief period were in any way unusual or severe. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2$^d$ Cir.), *cert. denied*, 525 U.S. 907 (1998). Likewise, he has not alleged or presented facts showing that the finding of guilt on the harassment charge lacked evidentiary support. *Luna v. Pico*, 356 F.3d 481, 487-88 (2$^d$ Cir. 2004) (no due process violation as long as "some evidence" supports finding of inmate's guilt).[3]

---

[3]Plaintiff alleges in his complaint that he did not write the letter that gave rise to Brown's charge of harassment, and that the "letter was not in [plaintiff's] handwriting ... ." Dkt. #1 at 8. Aside from the fact that the letter does appear to be in plaintiff's handwriting, *see* Dkt. #1 at 12, the hearing officer relied upon testimony by an officer that plaintiff directly handed him the letter. Dkt. #1 at 15. That certainly constitutes at least some evidence that plaintiff wrote the letter, and I also find the evidence supporting the finding of guilt on the harassment charge to be constitutionally adequate. *See* 7 N.Y.C.R.R. § 270.2 (stating that harassment "includes, but is not limited to, using insolent, abusive, or obscene language or gestures, or writing or otherwise communicating messages of a personal nature to an employee or any other person ... .").

### III. Brown's Personnel File

On September 29, 2006, Magistrate Judge Jonathan W. Feldman issued a Decision and Order (Dkt. #64) concerning plaintiff's motion to compel discovery of Brown's disciplinary history. Magistrate Judge Feldman stated that after reviewing, *in camera*, documents from Brown's personnel file concerning a prior complaint against Brown, he concluded that the best course of action would be to forward the material to me for my "consideration as to whether it should be disclosed for summary judgment or, if necessary, for trial." *Id.* at 3.

Having conducted my own *in camera* review of these materials, I decline to order that they be produced to plaintiff. The records concern an incident involving Brown and another inmate over twenty years ago, and in any event they have no bearing on the Court's conclusion that defendants are entitled to summary judgment on the ground of qualified immunity. To the extent that these materials might constitute impeachment evidence at trial, plaintiff's request that they be disclosed is denied as moot.

### CONCLUSION

Defendants' motion for summary judgment (Dkt. #50) is granted, and the complaint is dismissed.

Plaintiff's motions for a decision on defendants' motion for summary judgment (Dkt. #71 and #74) are denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 11, 2008.